EVELYN HENRY, BY CHARLES HENRY, HER NEXT FRIEND, AND THE SAID CHARLES HENRY, PLAIN-TIFFS-RESPONDENTS, v. CLARA A. HAUSSLING, LILLIAN NEUMAN, CLARA HAUSSLING AND ALICE L. HAUSSLING, DEFENDANTS-APPELLANTS.

Submitted October 12, 1934—Decided January 24, 1935.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and BODINE.

For the appellants, *M. Harold Higgins.*

For the respondents, *Harold Simandl.*

The opinion of the court was delivered by

PARKER, J. This is a tenement house accident case. The infant plaintiff was a young child at the time of the injury and the father brings his suit also for damages *per quod.* There was a verdict for the child, which was reduced on rule to show cause, exceptions being reserved. The verdict for the father was not disturbed. The plaintiffs' case was that when the parents rented certain rooms on the second floor of a building at 132 Railroad avenue in Newark, the agent for the

landlord said that there was no back yard in which to hang out the clothes, &c., but only a roof, and that the clothes could be hung out and the children allowed on that roof, but that they should not be allowed to make nail holes in the roof. The child's mother testified that she noticed that the skylights were in bad order and called attention to it. The little girl, Evelyn, plaintiff, was sent out by her mother to bring in the clothes pins and fell through the skylight. She testified in the case and said that she had just bent down to pick up the clothes pins and "sort of leaned against the skylight and felt herself falling; that it was rotten around the ends and could be lifted up." There was a motion to nonsuit on the opening and the court allowed the plaintiffs to make an additional opening. This is now urged for error. We think that there was no error which should lead to a reversal.

In the first place, we think that it was entirely within the discretion of the trial court to permit an additional opening to cover any point missing on the original opening. In the second place, we consider that the refusal of a motion to nonsuit on the opening stands at least as well as a similar refusal to nonsuit when the plaintiff rests. In the latter case the rule is well settled that even though it be error at the time to refuse to nonsuit, if on the defendants' case facts appear which raise a jury question, that error is cured. Our cases are plenary in this regard. With regard to a motion to nonsuit on the opening it was said in *Kelly* v. *Bergen County Gas Co.*, 74 *N. J. L.* 604: "In practice, a motion for a nonsuit, made upon the opening of counsel, is, perhaps, more liberally treated than an application for a nonsuit at the close of the plaintiff's case. In the former case, if objection be made to a statement too meagre to sustain the plaintiff's case, counsel will, doubtless, be permitted to enlarge his statement. But in the haste required by the pressure of business at the present day, counsel, in general, restrict themselves to a mere outline of the case they design to present."

Other cases on the same line are *Jordan* v. *Reed,* 77 *N. J. L.* 584; *Carr* v. *Delaware, Lackawanna and Western Rail-*

*road Co.,* 78 *Id.* 692; *D'Aloia* v. *Unione Fratellanza,* 84 *Id.* 683; *Davenport* v. *Holden,* 95 *Id.* 197; *Carey* v. *Gray,* 98 *Id.* 217; *Lowenstein* v. *Lohman,* 109 *Id.* 215. In this last case we refused to consider the alleged error in nonsuiting simply because there was nothing in the case to show what the opening was or that it stated any case for the jury, and the presumption was that no error had been committed. In the case at bar, there was in our opinion quite sufficient evidence produced on the plaintiff's case to carry it past a nonsuit. We think, in any event, the refusal to nonsuit on the opening, even conceding it to be error, which we do not concede, was harmless error.

There are twenty-seven grounds of appeal. A great many of them are defective as not bringing up any ruling of the trial court. What we have just said above covers the first and second.

The third and fourth merely attack the verdict of the jury.

The fifth is that the verdict of the jury was contrary to the charge which, of course, is not a proper ground of appeal.

Taking up the other grounds as argued, Nos. 6, 12 and 15 are the refusal to nonsuit and direct because the plaintiffs failed to show violation of duty by the defendants. There was evidence that the roof was used in common by tenants and was in bad order, with rotten skylights. The argument apparently is that there was in any event no invitation to use the skylights. The answer of course is that if the skylights were something with which tenants might come in contact incidentally while hanging out clothes, and rotten enough to let them through the roof with comparatively insignificant pressure, it would seem that negligence would be inferable. The case of *Sanders* v. *Eastern, &c., Co.,* 63 *N. J. L.* 554, is not to the contrary. There the plaintiff was repairing a skylight on the roof, one of the panes of glass being broken, and in so doing put his hand on the center piece or mullion and leaned with so much of the weight of his body upon it as to break it. The court there held that it was impossible to discover any ground in reason for imposing upon the defendant any duty to have it so constructed

as to bear the weight or any part of the weight of a man engaged in repairing it. That, however, is not this case. In the first place, the roof was devoted to the reasonable use of the tenants for hanging out clothes and of their children for playing if the testimony on the part of the plaintiffs was to be believed. The jury might well say that such uses would reasonably involve incidental contact with the skylight, and the testimony with regard to its condition was such as to justify the jury, in our estimation, in saying that it was not maintained in proper condition to meet even this incidental contact.

Grounds 7 and 16 relate to refusal to control the jury because, as claimed, there was nothing to show that the defendants knew or should have known the conditions.

Grounds 8 and 17 are a similar refusal for failure to prove control by defendants.

In both these cases there is evidence to the contrary. In the first case there is even evidence that notice was given to the defendants.

Grounds 9 and 18 invoke the doctrine of assumption of risk.

Grounds 10 and 19 call for a court ruling that the plaintiff had exceeded the bounds of invitation. Both of these were questions for the jury.

Grounds 11 and 20 are that the court erred in refusing to nonsuit or direct on the ground that there was no evidence of willful injury. This, of course, is predicated on an assumption of the absence of any duty, and as the jury were justified in finding a duty existed, the grounds necessarily fail.

Grounds 13, 14, 21 and 22 are based on propositions already discussed and controlled by what has been said.

Ground 23 attacks the refusal to charge the defendants' request that there was no duty upon an owner to exercise active care to a licensee or trespasser, nor is it of consequence that the plaintiff occupies the status of an infant, for the defendant owner being under no duty of responsibility, no right of liability can be predicated upon a non-existent duty. This request undertook to state certain general rules without

specifically applying them to the case on trial and could not reasonably have been of much help to the jury if charged. However, it is sufficient to say that on a reading of the charge we are clearly of the opinion that the request was fully covered. The same may be said of ground 24 relating to the failure to charge the rule that the liability of the defendant does not exceed the scope of the invitation.

Grounds 25, 26 and 27 are alleged errors in rulings on the admission of testimony.

The accident occurred in August, 1928. A Mrs. Major was allowed to testify that she had been a tenant in 1926 or 1927 of the same flat and had used the roof for hanging out clothes, and also that her son played out on that roof. There were objections on the ground that the time was too remote and the letting may have been different. As to remoteness, it was only about four months before the Henrys moved in, and the witness described a permanent set-up of the roof with clothes lines and other appliances. We see no harmful error here.

Mrs. Smith testified that in 1920 she helped clean the house for furnished rooms, and from her rooms at No. 136 she got on the roof by walking down two steps through a door. This might well have been excluded as irrelevant, but the objection was that it was not shown that she was a tenant. After the court had ruled, counsel said: "We object because she might have gone out and done anything on that roof." The objection to us is hardly intelligible and we think not such an objection as would put the court in error for overruling it.

There were two other questions specified in ground 25 and to these there were no objections.

We fail to find any harmful error, and the judgment is therefore affirmed.